**Joseph ABRAHAM Jr., Appellant,**

v.

**RYLAND MORTGAGE COMPANY, Appellee.**

**No. 08–98–00217–CV.**

Court of Appeals of Texas, El Paso.

June 24, 1999.

Carlos Eduardo Cardenas, Law Office of Joseph Abraham, Jr., El Paso, for Appellant

Don W. Minton, Corey Haugland, James, Goldman & Haugland, P.C., El Paso, for Appellee.

Before Panel No. 4 BARAJAS, C.J., LARSEN, and McCLURE, JJ.

## OPINION

SUSAN LARSEN, Justice.

This is an appeal from a summary judgment in favor of the defendant mortgage company on the plaintiff's wrongful foreclosure and tortious interference causes of action. We affirm in part and reverse and remand in part.

### FACTS

On October 30, 1978, Ernest Guinn executed a promissory note in favor of Mutual Savings Association of El Paso. The note was secured by a deed of trust on property located at 1905 North Kansas Street in El Paso, Texas ("1905 North Kansas"). Appellee Ryland Mortgage Company is the successor-in-interest to Mutual on the note and deed of trust. On September 12, 1997, after Guinn allowed the note to fall into default, Ryland notified Guinn that the note had been accelerated. Ryland further informed Guinn that 1905 North Kansas would be sold at a non-judicial foreclosure sale on October 7, 1997 unless he paid the remaining balance before the sale date. Guinn admits that he received the notice, but he placed it in the visor of his truck and forgot about it. When Guinn failed to pay the balance on the note, Ryland fore-

closed on 1905 North Kansas as stated in the notice.

Appellant Joseph Abraham Jr. sued Ryland claiming that he had entered into a contract of sale with Guinn to purchase 1905 North Kansas and that Ryland was aware of Abraham's interest in the property.[1] Abraham raised claims for wrongful foreclosure based on Ryland's failure to notify him of the acceleration and foreclosure, and for tortious interference with his contract to purchase 1905 North Kansas. Ryland moved for summary judgment on all of Abraham's claims and the trial court granted judgment in favor of Ryland on June 24, 1998. Abraham appeals.

### WRONGFUL FORECLOSURE

In his first three issues, Abraham challenges summary judgment on his wrongful foreclosure claims. Ryland moved for summary judgment on four grounds: (1) Abraham had no evidence to support his wrongful foreclosure claim; (2) Abraham lacked standing to sue for wrongful foreclosure; (3) Abraham was not entitled to notice of the foreclosure; and (4) that Ryland sent appropriate notices to Guinn and therefore there was no wrongful foreclosure.

### NO EVIDENCE MOTION

■ Ryland's first ground, that Abraham had no evidence to support his wrongful foreclosure claim, is controlled by Texas Rule of Civil Procedure 166a(i), which provides:

No–Evidence Motion. After adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. *The motion must state the elements as to which there is no evidence.* The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact.[2]

In its motion, Ryland simply stated that "there is absolutely no evidence to support Abraham's assertions that Ryland committed a wrongful foreclosure . . . ." There is no reference to any element of Abraham's cause of action as Rule 166a(i) requires, nor is there any reference to any specific allegation contained in Abraham's petition. Accordingly, Ryland's motion did not meet the requirements of the Rule and the trial court could not have appropriately granted summary judgment on that ground.

### STANDARD OF REVIEW: REMAINING GROUNDS

The remainder of Ryland's grounds require Ryland to prove its entitlement to judgment as a matter of law. As articulated in *Nixon v. Mr. Property Management Co., Inc.,*[3] the standards for appellate review of a summary judgment are:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.[4]

A defendant must disprove, as a matter of law, at least one essential element of each of the plaintiff's causes of action, or it must establish one or more of its defenses as a matter of law.[5] Thus, the relevant issues are whether Ryland established its

---

1. Guinn was not a party to Abraham's suit.

2. Tex.R. Civ. P. 166a(i) (emphasis added).

3. 690 S.W.2d 546 (Tex.1985).

4. *Id.* at 548–49.

5. *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991); *Bell v. Showa Denko K.K.,* 899 S.W.2d 749, 753 (Tex.App.—Amarillo 1995, writ denied).

entitlement to summary judgment as a matter of law by conclusively proving that Abraham lacked standing to bring his wrongful foreclosure claim, or by conclusively disproving an element of Abraham's wrongful foreclosure cause of action.

### 1. Standing

■ Ryland contends that it conclusively established Abraham's lack of standing through the affidavit of Linda Wilder, a supervisor for Ryland. In pertinent part, Wilder's affidavit states:

> According to Ryland's books and records, Guinn was the sole person obligated to pay the Note. Joseph Abraham, Jr. ('Abraham') did not ever inform Ryland that he had assumed the note and no records in Ryland's possession reflect any assumption by Abraham.
>
> Ryland was always under the impression that Abraham was Guinn's attorney.
>
> To Ryland's understanding, Guinn was the only person obligated to pay the Note.

Abraham created a fact issue, however, by submitting a portion from his deposition including testimony that he and Guinn entered into a contract of sale for 1905 North Kansas, and that he had become obligated to pay the note.

■ Ryland argues that Abraham's oral testimony regarding the existence of a contract for sale of 1905 North Kansas violates the "best evidence rule" and therefore is not competent summary judgment evidence. The best evidence rule requires that "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required except as otherwise provided in these rules or by law." [6] Rule 1004, however, allows other evidence of the contents of a writing if all originals are lost or have been destroyed.[7] In his deposition testimony submitted as summary judgment evidence, Abraham testified that he was "looking" for the contract of sale. Because we must indulge all inferences in favor of Abraham as the non-movant, we find this evidence sufficient in the context of summary judgment to establish that the contract was lost thereby allowing Abraham to testify to its existence and content.

■ Ryland further argues that even if a contract of sale exists, it gives Abraham only an equitable interest in the property and does not give him standing to set aside the foreclosure sale in the absence of notice to Ryland. Generally, only the mortgagor or a party who is in privity with the mortgagor has standing to contest the validity of a foreclosure sale under a deed of trust.[8] But there is an exception to this rule applicable under Abraham's version of the facts. When a third party has a property interest that will be affected by a foreclosure sale, whether legal or equitable, the third party has standing to challenge the sale to the extent that the sale will affect its rights.[9] Thus, Abraham has standing to challenge the sale as an equitable interest holder. Ryland argues that Abraham's standing as an equitable interest holder is limited by Section 13.001 of the Texas Property Code, which provides:

> A conveyance of real property or an interest in real property or a mortgage or deed of trust is void as to a creditor or to a subsequent purchaser for a valuable consideration without notice unless the instrument has been acknowledged, sworn to, or proved and filed for record as required by law.[10]

It is undisputed that the contract of sale was never recorded. Ryland therefore argues that Wilder's affidavit, which established that Ryland did not receive notice of Abraham's interest in the property, conclusively establishes that the alleged convey-

---

6. TEX.R. EVID. 1002.

7. See TEX.R. EVID. 1004(a).

8. Goswami v. Metropolitan Savings and Loan Assoc., 751 S.W.2d 487, 489 (Tex.1988).

9. Id.

10. TEX. PROP.CODE ANN. § 13.001(a) (Vernon Supp.1999).

ance between Guinn and Abraham was void as to Ryland.

Abraham, however, produced at least some evidence that Ryland was on notice of his alleged interest in the property. In a deposition excerpt Abraham submitted as summary judgment evidence, he testified that someone at his office called and orally notified Ryland that he had purchased the property. Ryland did not object to this evidence. Thus, there is some evidence that Ryland was on notice of Abraham's interest in the property. Accordingly, we find that Abraham created a fact issue as to his standing to question Ryland's foreclosure.

### 2. Adequate Notice Under the Deed of Trust

■ Abraham based his wrongful foreclosure claim on Ryland's alleged failure to give adequate notice of the foreclosure sale, either to him or to Guinn, under the Deed of Trust. Ryland moved for summary judgment on the ground that it gave all required notices. The parties dispute whether Abraham, as an allegedly unknown secondary purchaser, was entitled to notice at all, and whether notices to Guinn were sent to the correct address. We need not reach these issues, however, because we find that Ryland failed to submit summary judgment proof that it gave a notice of its intent to accelerate the debt to anyone at any address. The deed of trust required that:

> [U]pon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, Including the covenants to pay when due any sums secured by this Deed of Trust, Lender prior to acceleration shall mail notice to Borrower ... specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 30 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property.... If the breach is not cured on or before the date specified in the notice, Lender at Lender's option may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law.

■ Acceleration clauses are strictly construed with preference given to a construction that will avoid forfeiture and prevent acceleration of the debt to maturity.[11] The only notice appearing in this record, and the only notice referenced in Wilder's affidavit, states Ryland had already accelerated the maturity of the debt. There is no summary judgment proof that Ryland gave any notice that it intended to accelerate the debt, nor is there any evidence that Guinn was given an opportunity to cure the defaults prior to acceleration as required by the deed of trust. Accordingly, Ryland failed to conclusively prove that it complied with the deed of trust's notice terms.

### CONCLUSION: WRONGFUL FORECLOSURE

Having found that Ryland's "no evidence" motion failed to state the elements of Abraham's wrongful foreclosure claim on which Abraham had no evidence; that Abraham raised an issue of fact regarding his standing to sue for wrongful foreclosure; and that Ryland failed to establish compliance with the notice terms of the deed of trust as a matter of law, we sustain

---

**11.** *Swoboda v. Wilshire Credit Corp.,* 975 S.W.2d 770, 777 n. 3 (Tex.App.—Corpus Christi 1998, pet. denied) (citing *Shumway v. Horizon Credit Corp.,* 801 S.W.2d 890, 893 (Tex.1991) (harshness of acceleration option requires both strict reading of terms of option and notice to debtor)); *Crow v. Heath,* 516 S.W.2d 225, 229 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n.r.e.) (enforcement of acceleration clause in deed of trust must stand strict scrutiny of court; exercise of power of sale must strictly conform to terms and conditions in trust instrument).

Abraham's first and third issues. Our disposition of these issues makes it unnecessary for us to address Abraham's second issue.

### TORTIOUS INTERFERENCE

 Abraham alternatively pleaded a cause of action against Ryland for tortious interference with his alleged contract to purchase 1905 North Kansas. He challenges the trial court's summary judgment on this cause of action with his fourth through seventh issues. To recover for tortious interference with an existing contract, a plaintiff must prove: (1) the existence of a contract subject to interference; (2) a willful and intentional act of interference; (3) the act was a proximate cause of the plaintiff's damages; and (4) actual damage or loss.[12] Ryland moved for summary judgment on this claim on several grounds. In this case, we find that Ryland conclusively established its justification defense. Accordingly, we need not discuss Ryland's other grounds.[13]

### THE JUSTIFICATION DEFENSE

 Even if a plaintiff establishes the elements of a tortious interference cause of action, a defendant may still prevail upon establishing the affirmative defense of justification.[14] The justification defense is based on either the exercise of: (1) one's own legal rights; or (2) a good-faith claim to a colorable legal right, even though that claim ultimately proves to be mistaken.[15] Ryland established that the note secured by the deed of trust was in default, and that the deed of trust gave Ryland the right to foreclose on 1905 North Kansas in the event of default. Abraham's summary judgment evidence did not create fact issues on these defensive elements. Accordingly, Ryland con-

clusively established that it was acting within its rights under the deed of trust, albeit imperfectly by its failure to follow the notice provisions, when it foreclosed on 1905 North Kansas. We therefore overrule Abraham's fourth through seventh issues.

### ADDITIONAL ISSUES

On appeal, Ryland argues that it is entitled to summary judgment on Abraham's wrongful foreclosure claims for two additional reasons: (1) paragraph seventeen of the deed of trust allows Ryland to foreclose upon notice that an interest in the property has been sold or transferred; and (2) Ryland conclusively established that Abraham had no damages, or, alternatively, waived his damages through the doctrine of election. Ryland's amended summary judgment motion, however, did not raise these issues to the trial court. The motion for summary judgment must state the specific grounds relied upon.[16] Accordingly, we decline to address these arguments.

### CONCLUSION

Having sustained Abraham's first and third issues, we reverse that portion of the summary judgment in favor of Ryland on Abraham's wrongful foreclosure claim. We affirm that portion of the summary judgment in favor of Ryland on Abraham's tortious interference claims. We remand the case to the trial court for further proceedings in accordance with this opinion.

---

12. *Texas Beef Cattle Co. v. Green*, 921 S.W.2d 203, 210 (Tex.1996); *Holloway v. Skinner*, 898 S.W.2d 793, 795–96 (Tex.1995).

13. *See State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex.1993) (When a trial court's order granting summary judgment does not specify the ground or grounds relied on for the ruling, as in this case, summary

judgment will be affirmed on appeal if any of the theories advanced are meritorious).

14. *Texas Beef Cattle Co.*, 921 S.W.2d at 210.

15. *Id.* at 211.

16. Tex.R. Civ. P. 166a(c).