Becker v. State



COURT OF APPEALS


EIGHTH DISTRICT OF TEXAS


EL PASO, TEXAS



)


FRANK J. HOLDAMPF d/b/a
)
 

PATRIOT OIL COMPANY,
)
 No. 08-02-00190-CV

)


 Appellant,
)
 Appeal from

)
 

v.
)
 109th District Court

)


WEST TEXAS STATE BANK, ODESSA,
)
 of Winkler County, Texas

FORMERLY KERMIT STATE BANK,
)


 )
 (TC# 14,219)

 Appellee.
)



MEMORANDUM OPINION



 Frank J. Holdampf d/b/a Patriot Oil Company (Holdampf) appeals from summary judgment
entered in favor of West Texas State Bank, Odessa, formerly Kermit State Bank (WTSB). We
affirm.

FACTUAL SUMMARY


 Holdampf operated Patriot Oil Company, a full service gas station, in Midland, Texas. He
purchased fuel from B&D Oil Company (B&D) in Kermit, Texas, but eventually fell behind on his
payments. Holdampf alleges that he and the owner of B&D had an agreement that would have
allowed him to continue to purchase fuel and slowly pay off his debt, but WTSB instructed B&D to
stop selling him fuel or the bank would "call her loan." B&D subsequently filed a suit on
sworn account against Holdampf in Midland County. Holdampf, in turn, filed claims against various
third-party defendants, including a claim against WTSB for tortious interference with a contract. 
Following a jury trial, B&D obtained a judgment against Holdampf for $78,895.89 plus interest and
attorney's fees. The trial court subsequently severed Holdampf's cause of action against WTSB into
a new cause number and transferred venue to Winkler County. WTSB then filed a motion for both
traditional and no-evidence summary judgment. The trial court granted summary judgment in favor
of WTSB.

SUMMARY JUDGMENT


 In his first issue, Holdampf challenges the summary judgment granted in favor of WTSB. 
In a traditional summary judgment proceeding, the standard of review on appeal is whether the
successful movant at the trial level carried the burden of showing that there is no genuine issue of
material fact and that judgment should be granted as a matter of law. Lear Siegler, Inc. v. Perez, 819
S.W.2d 470, 471 (Tex. 1991); Duran v. Furr's Supermarkets, Inc., 921 S.W.2d 778, 784 (Tex.App.--El Paso 1996, writ denied). Thus, the question on appeal is not whether the summary judgment
proof raises fact issues as to required elements of the movant's cause or claim, but whether the
summary judgment proof establishes, as a matter of law, that there is no genuine issue of material
fact as to one or more elements of the movant's cause or claim. Gibbs v. General Motors Corp., 450
S.W.2d 827, 828 (Tex. 1970); Duran, 921 S.W.2d at 784. In resolving the issue of whether the
movant has carried this burden, all evidence favorable to the non-movant must be taken as true and
all reasonable inferences, including any doubts, must be resolved in the non-movant's favor. Nixon
v. Mr. Property Management Co., Inc., 690 S.W.2d 546, 548-49 (Tex. 1985); Duran, 921 S.W.2d
at 784.

 To recover for tortious interference with a contract, one must prove: (1) the existence of a
contract subject to interference; (2) a willful and intentional act of interference by the defendant; (3)
that the defendant's act was the proximate cause of the plaintiff's damage; and (4) that actual damage
or loss to the plaintiff occurred. See Texas Beef Cattle Co. v. Green, 921 S.W.2d 203, 210 (Tex.
1996); Abraham v. Ryland Mortgage Co., 995 S.W.2d 890, 895 n.12 (Tex.App.--El Paso 1999, no
pet.).

 WTSB filed its motion for summary judgment on December 28, 2001. Its summary
judgment evidence consisted of an affidavit by Mark W. Sparks, president of the Kermit branch of
the bank. From mid-1996 until December of 2001, Sparks had served as vice president of the bank. 
B&D's loan with WTSB is secured by the company's tangible and intangible property, including
accounts receivable. Sparks is the sole loan officer at the bank and is the only person at the bank
who communicates with B&D regarding its loans. Sparks had no knowledge of a contract or
agreement between Holdampf and B&D and he never discussed the Holdampf account receivable
with anyone at B&D. 

 Holdampf did not file a response but instead, on January 17, 2002, filed a document entitled,
"Notice of Automatic Stay To West Texas State Bank, Odessa, Et Al" which advised that an
automatic bankruptcy stay had been in effect since March 22, 2001, and therefore, the summary
judgment motion was "moot." Counsel for WTSB notified Holdampf that the bankruptcy stay had
been lifted on August 31, 2001, and it intended to present the summary judgment motion on the
scheduled hearing date, February 20, 2002. Holdampf filed a response to the motion for summary
judgment on January 24, 2002. That response included Holdampf's own affidavit, a portion of
which stated as follows: 

 In June of 1998, I traveled from Midland to Kermit to Anell's (1) home office to discuss
our mutual bad situation. I owed payments for at least 7 shipments of fuel, which I
was unable to pay all at once. Over the phone, she told me her bank was pressuring
her to reduce her loan which was about $276,000.00, and about 1/5 of the loan was
equal to Patriot's balance to B&D Oil.

 

 My friend Anell agreed to sell fuel on a certified check basis, which was to be given
to her transport driver along with a second check of approximately $400.00 towards
the old balance. This we both agreed to in her office in the yard of B&D Oil
Company in Kermit, Texas.

 

 We both felt that the new payment plan would succeed solving both of our problems
during what had become very predatory times that had already destroyed so may [sic]
full service stations across Texas. We parted friends hoping the best from our mutual
beneficial contract of survival. I felt relieved as I drove back to Midland from
Kermit. I felt relieved and happy and ready to continue working 16 hours a day, 7
days a week to make our agreement work.

 

 The very next week, I received a call from Anell. She was very upset. Kermit State
Bank had called her and told her to cut Patriot off! They told her that a check from
an old shipment had not cleared the bank and they told her to cut me off or her whole
$276,000.00 loan would be called. Kermit State Bank did not even let our certified
check payment plan get off the ground. They intentionally interfered with the
contract between B&D Oil and Patriot. Anell was very upset.


 A few days latter [sic], I called Anell to see if the bank had a change of heart because
we needed a load of fuel. She said that Kermit State Bank was adamant that she
could not ship no fuel to Patriot, even for cash in the form of a certified check.


 I made a second trip to Kermit from Midland only to hear a repeat of what I was told
on the phone. They had told her again that if she shipped me any fuel, even for cash
that they would call her loan. I left Kermit, angry with the Kermit State Bank
because the Bank's action hurt both Anell's business and my business. 


 Hoping that the Kermit State Bank would come to their senses and stop interfering
with my contract with Anell, I made a third trip to Kermit. I was met by open
hostility from Anell. She had totally adopted the Bank's attitude. 

 

WTSB argues, as it did in the trial court, that Holdampf's affidavit is incompetent summary
judgment evidence because it contains hearsay statements attributed to Anell Crudup. Under the
Rules of Civil Procedure, supporting and opposing summary judgment affidavits must be made on
personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show
affirmatively that the affiant is competent to testify to the matters stated therein. Tex.R.Civ.P.
166a(f); Brownlee v. Brownlee, 665 S.W.2d 111, 112 (Tex. 1984). Conclusions of the affiant that
have no factual support are insufficient to raise an issue of fact, and hearsay statements contained
in affidavits are not competent to serve as summary judgment evidence. Ryland Group, Inc. v.
Hood, 924 S.W.2d 120, 122 (Tex. 1996); Youngstown Sheet & Tube Co. v. Penn, 363 S.W.2d 230,
233 (Tex. 1962).

 Even considering Holdampf's hearsay-on-hearsay statements, however, his affidavit does not
raise a fact issue as to each element of the tortious interference claim. Crudup told Holdampf that
WTSB instructed her to cut off fuel shipments to Holdampf because his check for a previous
shipment had not cleared. She later told Holdampf that WTSB told her not to ship fuel to him even
on a cash basis. These statements do not show that WTSB had knowledge of the contract allegedly
existing between Holdampf and B&D. Simply because WTSB instructed B&D not to sell fuel to
Holdampf on a cash basis does not mean that Crudup informed the bank that she had a contract with
Holdampf to sell him fuel for cash or that she and Holdampf had reached an agreement for payment
on his debt. For the same reason, the affidavit does not show or raise a fact issue that WTSB
intentionally interfered with the alleged agreement. Because Holdampf failed to raise a fact issue
as to at least one element of his cause of action, the trial court did not err in granting summary
judgment in favor of WTSB. Issue One is overruled.

JURISDICTION


 In his second issue, Holdampf alleges that the amount of damages involved in this case is
beyond the jurisdictional limits of the district court. Holdampf included this issue in the "Issues
Presented" portion of his brief but he has not provided any argument or citation of authority to
support it. Therefore, it is waived. Tex.R.App.P. 38.1(h); Walton v. Phillips Petroleum Co., 65
S.W.3d 262, 276 (Tex.App.--El Paso 2001, pet. denied); City of Midland v. Sullivan, 33 S.W.3d 1,
17 (Tex.App.--El Paso 2000, pet. dism'd w.o.j.). Issue Two is overruled. Having overruled both
issues, we affirm the judgment of the trial court.



June 3, 2004 

 ANN CRAWFORD McCLURE, Justice


Before Panel No. 2

Barajas, C.J., McClure, and Chew, JJ.

1. Anell Crudup is the president of B&D.